Opinion issued October 15, 2009











In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00273-CV




CYNTHIA A. HOUCHINS AND DARRELL E. HOUCHINS, Appellants

V.

DEVON ENERGY PRODUCTION COMPANY, L.P. AND PHILLIP TREW,
SR., Appellees




On Appeal from the 18th District Court
Johnson County, Texas
Trial Court Cause No. C-2005-00674




MEMORANDUM OPINION
          In this appeal, we must determine whether the language of a deed is ambiguous
and whether the deed reserved mineral rights to the grantor. The district court held
the deed unambiguously reserved to the grantor all the minerals.


 We affirm.
BackgroundOn January 24, 1993, appellants Cynthia A. Houchins and Darrell E. Houchins
and appellee Phillip H. Trew, Sr. signed a contract for sale of approximately 69 acres
in Johnson County. On February 2, 1994, Trew signed a warranty deed conveying
the land to the Houchinses. The deed, in relevant part, states the following:
That I, PHILLIP H. TREW, as his sole and separate property, . . . HAS,
GRANTED, SOLD AND CONVEYED, and by these presents DOES
HEREBY GRANT, SELL AND CONVEY unto DARRELL E.
HOUCHINS and CYNTHIA A. HOUCHINS (Grantees) . . . all of that
certain tract of land [description] . . . .
 
This conveyance is expressly made subject to any and all restrictions,
covenants and easements, if any, relating to the hereinabove described
property, but only to the extent they are still in effect, shown of record
. . . and to all zoning laws, regulations and ordinances of municipal or
other governmental authorities, if any, but only to the extent they are
still in effect, relating to the hereinabove described property. This
conveyance is also expressly subject to all restrictions, covenants and
easements set forth in the Note and Deed of Trust executed and
delivered to Grantor. To the extent that Grantor maintains any mineral
rights to the subject property, Grantor expressly retains such mineral
rights and exempts same from the conveyance herein. Grantees accept
property in its “AS IS” condition.
          The Houchinses signed a February 1, 1994 deed of trust in favor of Trew, as
named beneficiary, with the 69 acres of land serving as security for a $145,000 note
from the Houchinses to Trew. The deed of trust contains includes the following
language, under the heading “GENERAL PROVISIONS”:
10.The use of the property securing this deed of trust shall include
residential and personal agricultural use only, and same shall not be used
primarily for the operation of a business. . . . .
. . . .
13.This deed of trust shall bind, inure to the benefit of, and be
exercised by successors in interest of all parties.
          In February 2001, Trew signed an oil and gas lease on the land with a five-year
primary term. The current successor-in-interest to the original lessee is appellee
Devon Energy Production Company, L.P. Devon attempted to begin drilling on the
land in December 2005, and the Houchinses denied Devon access, claiming they
owned the minerals.
          In December 2005, Devon sued the Houchinses and obtained a temporary
injunction allowing it to exercise its rights under the oil and gas lease. The
Houchinses filed a third-party action against Trew for reformation of the contract of
sale, specific performance, a declaratory judgment, and damages under the Deceptive
Trade Practices-Consumer Protection Act. See Tex. Bus. & Com. Code Ann.
§§ 17.41–.63 (Vernon 2002 & Supp. 2008) (DTPA). The Houchinses filed a
counterclaim against Devon to quiet title to the land, for trespass to try title, and for
a declaratory judgment.
          The Houchinses, Trew, and Devon each filed motions for summary judgment. 
The district court rendered summary judgment for Trew and Devon, holding that “the
deed was unambiguous in its mineral reservation to Trew.” The court rendered
summary judgment on the Houchinses’ remaining claims against Devon, denied
Trew’s motion for summary judgment based on his limitations defense to the
Houchinses’ DTPA clams, and denied the Houchinses’ motion for summary
judgment. The remaining DTPA claims were tried to the bench, and the district court
determined that the DTPA claims were groundless and brought in bad faith. The
district court rendered final judgment that the Houchinses take nothing from Trew
and Devon, that the deed unambiguously reserved to Trew all the minerals, that the
Houchinses be permanently enjoined from interfering with Devon regarding the oil
and gas lease, and that the Houchinses pay $38,000 to Devon and $37,500 to Trew.
Analysis
          On appeal, the Houchinses bring two issues. In their first issue, they contend
that Trew failed to reserve any mineral interest. In their second issue, they contend
that Trew and Devon are bound by the deed of trust provision that restricts use of the
premises to agricultural and residential uses.
 
I.       Interpretation of Trew Warranty Deed
          The operative language in the warranty deed reads as follows: “To the extent
that Grantor maintains any mineral rights to the subject property, Grantor expressly
retains such mineral rights to the subject property and exempts same from the
conveyance herein.” Trew relies upon this language for his claimed reservation of
mineral rights. The Houchinses claim the provision is merely an exception to Trew’s
warranty of title, and is not a reservation of mineral rights to Trew. Alternatively, the
Houchinses contend that the language is ambiguous, thus creating a fact issue as to
the parties’ intent.
A.      Exception vs. Reservation
          Relying on Klein v. Humble Oil & Refining Co., 67 S.W.2d 911 (Tex. Civ.
App.—Beaumont 1934), aff’d on other grounds, 86 S.W.2d 1077 (Tex. 1935), the
Houchinses contend that the operative deed language is an exception to the warranty
rather than a reservation of mineral rights. The Houchinses contend that by using the
verb “maintains,” the clause refers only to mineral rights that have been previously
exercised and thus “maintained” by Trew. They contend this interpretation is
supported by the clause’s location within a paragraph that lists other exceptions to
title, such as easements, governmental codes, and restrictions, and the fact that the
paragraph concludes with further language of exception, emphasizing that the
Houchinses were taking the property in “AS IS” condition. Invoking the “four
corners” canon of construction, the Houchinses ask us to interpret the operative
clause so as to be consistent with the other language of exception in the surrounding
paragraph, rather than as an isolated reservation of rights. E.g., Davis v. Andrews,
361 S.W.2d 419, 423 (Tex. Civ. App.–Dallas 1962, writ ref’d n.r.e.) (“four corners”
canon). Finally, the Houchinses note that the language of the separate deed-of-trust
document restricts use of the land to “residential and personal agricultural use only,”
and that the document, which is expressly referenced by the warranty deed, states that
it applies to “all parties,” further indicating that Trew did not intend to reserve
minerals in the transaction.
          The Klein case is not instructive to the issues presented by this appeal. In
Klein, land was conveyed from the Steins to the Kleins, with an express reservation
of one-eighth of all mineral rights. 67 S.W.2d at 912. The Kleins later conveyed the
same land to Baker with the following language:
There is however excepted from this conveyance 1/8th of all mineral
rights in and under ten acres of land . . . and it is understood that if no
production of oil is had on said 10 acres within a period of twenty years
from May 29, 1928, then this reservation shall lapse. Also understood
that the owner of said rights is not to participate in any oil lease or rental
bonuses that may be paid for any lease, and have no interest in any
future oil and gas lease.
67 S.W.2d at 913 (emphasis supplied). The Beaumont Court of Civil Appeals
concluded that the Kleins’ exception of “1/8th of all mineral rights” referred to the
Steins’ prior reservation, and that the Kleins’ subsequent exception was not a further
reservation of an additional one-eighth of all mineral rights. Id. at 914-17.



          The Houchinses argue that the Trew deed’s use of the terms “retain” and
“exempt” dictates that Trew has made an exception to Trew’s warranty of title,
similar to the deed in Klein, and thus is not a reservation of mineral rights. We
disagree. Unlike Klein, this appeal does not call upon us to interpret one purported
reservation of mineral rights in light of a prior grantor’s reservation of mineral rights. 
Instead, here, the deed stated that “Grantor [Trew] expressly retain[ed] such mineral
rights to the subject property.” (Emphasis supplied.) The Trew deed’s reference to
“Grantor” clearly specifies to whom the mineral rights were reserved, unlike the Klein
case, in which the court had to determine whether the disputed language was a
reservation of rights for the grantors, or alternatively an exception for rights
previously reserved by a prior grantor. As such, Klein is inapposite to this dispute.
B.      Interpretation of Deed Language
          Rather than focusing on characterizing the deed language at issue as an
“exception” or a “reservation,” our primary objective in construing a deed is to
determine the intent of the parties from the four corners of the deed. Luckel v. White,
819 S.W.2d 459, 461 (Tex. 1991). Even if the reviewing court could discern the
actual subjective intent of the parties, it is not that intent that governs the
interpretation of the deed. Id. at 462; see also J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003). Instead, we must discern the intent of the parties as
expressed in the deed as a whole. Luckel, 819 S.W.2d at 462. “[W]e must examine
and consider the entire writing in an effort to harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless.” J.M.
Davidson, 128 S.W.3d at 229; Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332
(Tex. 1983) (“Generally, the parties to a contract intend every clause to have some
effect and the Court will not strike down any portion of the contract unless there is
an irreconcilable conflict.”) (citing Woods v. Sims, 273 S.W.2d 617 (Tex. 1954)). No
single provision taken alone will be given controlling effect; rather, all the deed
provisions must be considered with reference to the whole instrument. See Seagull
Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006).
          A reservation of minerals must be made by clear language to be effective, and
courts do not favor reservations by implication. Sharp v. Fowler, 252 S.W.2d 153,
154 (Tex. 1952). We have no trouble concluding that the disputed language itself
(i.e., “Grantor expressly retains such mineral rights”) is sufficiently clear to indicate
a reservation of mineral rights. The question we must decide concerns whether an
intention to convey mineral rights is undercut by the location of this language within
the broader context of the surrounding paragraph and the full warranty deed.
          Giving effect to all provisions of the deed, we hold that Trew reserved all
mineral rights in the warranty deed. To conclude otherwise would require us to treat
as a complete nullity the deed’s language stating that “[t]o the extent that Grantor
maintains any mineral rights to the subject property, Grantor expressly retains such
mineral rights and exempts same from the conveyance herein.” No contortion of the
plain, ordinary, and generally accepted meanings of the disputed terms is required to
reach this conclusion. Contrary to the Houchinses’ argument, the reference to mineral
rights that grantor “maintains” reasonably can be understood to refer to the mineral
rights that were owned by the grantor prior to the conveyance. E.g., Black’s Law
Dictionary 1039 (9th ed. 2009) (defining “maintain” to include the meaning “[t]o
continue in possession of (property, etc.)”). Similarly, the reference that grantor
“retains” such mineral rights can reasonably be understood to refer to the grantor’s
intention to keep the mineral rights in his possession after the conveyance. E.g.,
Merriam-Webster’s Collegiate Dictionary 1063 (Frederick C. Mish ed., 11th
ed. 2003) (defining “retain” to include the primary meaning “to keep in possession
or use”); see also The New Shorter Oxford English Dictionary on Historical
Principles 2571 (Lesley Brown ed., 1993 ed.) (defining “retain” to include the
meaning “[k]eep hold or possession of; continue to have, keep, or possess”).



          In the alternative to their contention that the deed unambiguously conveys the
property in fee simple, the Houchinses contend that the deed is ambiguous, because
they contend it can be interpreted in some fashion other than reserving the mineral
rights to the grantor. We disagree.
          Deciding whether a deed is ambiguous is a question of law for the court. See
J.M. Davidson, 128 S.W.3d at 229; Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983). We may look to principles of contract interpretation to determine whether a
deed term is ambiguous. See, e.g., Brown v. Havard, 593 S.W.2d 939, 942 (Tex.
1980) (relying on general contract interpretation precedents to analyze whether a deed
was ambiguous). A deed term is not ambiguous because of a simple lack of clarity. 
See DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999);
Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). A deed
term is not ambiguous merely because the parties disagree on its meaning. See
Seagull Energy, 207 S.W.3d at 345; DeWitt County, 1 S.W.3d at 100. An ambiguity
arises only after the application of established rules of construction leaves a deed
susceptible to more than one meaning. Brown, 593 S.W.2d at 942; see also DeWitt
County, 1 S.W.3d at 100. For an ambiguity to exist, both potential meanings must be
reasonable. See J.M. Davidson, 128 S.W.3d 229; Columbia Gas Transmission Corp.
v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).
          Because the Houchinses’ proposed construction would render the operative
language (“Grantor expressly retains such mineral rights”) meaningless, it cannot be
a reasonable second interpretation. We conclude the deed is unambiguous in its
reservation of mineral rights for the benefit of Trew.
II.      Effect of Deed of Trust Restrictions
          In their second issue, the Houchinses contend that Trew and Devon are bound
by paragraphs 10 and 13 of the deed of trust, and that those provisions preclude
drilling for oil and gas on the property:
10.The use of the property securing this deed of trust shall include
residential and personal agricultural use only, and same shall not be used
primarily for the operation of a business. . . . .
. . . .
13.This deed of trust shall bind, inure to the benefit of, and be
exercised by successors in interest of all parties.
          To the extent that the Houchinses make this argument to show that Trew never
intended to reserve the mineral rights, we have already held that Trew’s statement in
the deed that he “expressly retains” the mineral rights definitively shows he reserved
them. To the extent that the Houchinses are instead arguing that the deed of trust
independently prohibits drilling for oil and gas on the property, regardless of who
owns the mineral rights, then this argument has not been adequately briefed. It is the
Houchinses’ burden on appeal to present a clear and concise argument why the
district court committed reversible error, with appropriate citations to authorities and
to the record. See Tex. R. App. P. 38.1(i); Abdelnour v. Mid Nat’l Holdings, Inc., 190
S.W.3d 237, 241–42 (Tex. App.—Houston [1st Dist.] 2006, no pet.). They have
failed to do so with respect to this issue, and we are thus unable to consider it.
Conclusion
          Construing the entire deed under the recognized canons of construction and in
light of the arguments raised on appeal by the Houchinses, we hold that the deed is
unambiguous, as it has only one meaning—Trew conveyed the land to the
Houchinses with the exception of the mineral rights, which he excluded from the
conveyance and kept for himself. Accordingly, we overrule all of the issues and
affirm the judgment of the district court.
 


 

                                                             Michael Massengale
                                                             Justice

Panel consists of Chief Justice Radack and Justices Bland and Massengale.